**OTTERBOURG P.C.**
Richard G. Haddad
Daniel F. Fiorillo
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Attorneys for GH N LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
                                                        :
In re:                                                  :          Chapter 11
                                                        :
GRACIOUS HOME LLC, *et al.*[1]                          :          Case No. 16-13500 (MKV)
                                                        :
                                        Debtors.        :          (Jointly Administered)
                                                        :
--------------------------------------------------------X

## NOTICE OF APPEAL[2]

Creditor-Appellant, GH N LLC (the "Appellant"), appeals under 28 U.S.C. § 158(a) to

the United States District Court for the Southern District of New York from the Order of the

United States Bankruptcy Court for the Southern District of New York (Vyskocil, U.S.B.J) (the

"Bankruptcy Court") entitled "Interim Order (I) Authorizing the Debtors to Obtain Postpetition

Financing and Grant Security Interests and Superpriority Administrative Expense Status; (II)

Modifying the Automatic Stay; (III) Authorizing the Debtors to Enter into Agreements with

Gracious Home Lending LLC; (IV) Scheduling a Final Hearing; and (V) Granting Related

---

[1]      The Debtors in these chapter cases, along with the last four digits of each of the Debtor's federal tax identification number are (1) Gracious Home Holdings LLC (3251); (2) Gracious Home Payroll LLC (3681); (3) GH East Side LLC (3251); (4) GH West Side LLC (3251); (5) GH Chelsea LLC (3251); and (6) Gracious (IP) LLC (3251).  According to the Motion, the latter five are disregarded for tax purposes and do not have their own tax identification numbers, but use that of Gracious Home Holdings LLC.  The address of the Debtors' corporate headquarters is 1201 Third Avenue, New York, New York 10021.
[2]      To the extent that this appeal is determined to present an appeal of an interlocutory order, Appellant asks that this Notice of Appeal be considered a Notice of Motion for Leave to Appeal, and a motion will be filed within fourteen days.

4674087.1

Relief" (the "Order") dated and entered in the above-captioned case on February 2, 2017 [Dkt.

No. 171] granting the Debtors' Motion for entry of an interim order authorizing the Debtors, on

an interim basis, to obtain post-petition financing from Gracious Home Lending LLC ("DIP

Lender") on a senior secured, superpriority basis, and granting DIP Lender a superpriority

administrative claim in the Chapter 11 cases (the "DIP Motion"). A copy of the Order is

annexed hereto as Exhibit "A".

The bases for the Appeal are as follows:

1.      As set forth in the DIP Motion, the statutory bases for the relief requested were

limited to Sections 105, 361, 262, 363, 364(c)(1), and 364(c)(2) of title 11 of the United States

Code (the "Bankruptcy Code"). DIP Motion at ¶ 2. Those sections allow for secured bankruptcy

financing only to the extent there is no other lien on an asset or any other lien is not primed. A

priming lien may only be granted following a motion under Section 364(d) of the Bankruptcy

Code. Notwithstanding that (a) the DIP Motion did not seek a priming lien under 11 U.S.C. §

364(d), (b) no prior notice was given of an intent to seek a priming lien, and (c) counsel for the

Debtors acknowledged on the record that the Debtors did not seek priming lien DIP financing

relief, the Bankruptcy Court granted a priming lien to the DIP Lender senior to the existing liens

of GH N. The Bankruptcy Court's granting of a priming lien with no notice to GH N is a

violation of due process.

2.      GH N was denied its due process rights at the February 2, 2017 hearing because

once it was stated that the Court was considering the granting of a priming lien senior to the lien

of GH N, the Bankruptcy Court refused to permit evidence proffered by GH N to determine

whether the statutory requirements necessary to prime GH N's liens were met or to establish the

amount of adequate protection necessary to protect GH N's then-existing senior lien and the

4674087.1

Bankruptcy Court did not allow GH N to present evidence in opposition notwithstanding that GH N offered to present a witness to testify.

3.      The granting of the Order and the priming of GH N's liens constitutes a "taking" under the Fifth Amendment of the United States Constitution in violation of GH N's rights.

4.      The "adequate protection" provided to GH N in the Order was not sufficient to protect GH N's then existing senior lien rights, and therefore the Order did not satisfy the requirements of 11 U.S.C. § 364(d).

The names of all parties to the Order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

| **Parties** | **Attorneys** |
|---|---|
| ***Appellant***: | |
| GH N LLC | Otterbourg P.C. |
| | Richard G. Haddad |
| | Daniel F. Fiorillo |
| | 230 Park Avenue |
| | New York, New York 10169 |
| | (212) 661-9100 |
| ***Appellees***: | |
| Gracious Home LLC, et al. | Joseph J. DiPasquale |
| | Irena M. Goldstein |
| | Trenk DiPasquale Della Fera & Sodono, PC |
| | 347 Mt. Pleasant Avenue |
| | Suite 300 |
| | West Orange, NJ 07052 |
| | (973) 243-8600 |
| Gracious Home Lending LLC | Robert M. Hirsh |
| | Jeffrey N. Rothleder |
| | Arent Fox LLP |
| | 1675 Broadway |
| | New York, NY 10019 |
| | (212) 484-3900 |

4674087.1

Official Committee of Unsecured Creditors   John R. Ashmead, Esq.
Robert J. Gayda, Esq
Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004
(212) 574-1200


Dated: New York, New York
February 2, 2017

**OTTERBOURG P.C.**

By: /s/ *Richard G. Haddad*
Richard G. Haddad
Daniel F. Fiorillo
Members of the Firm
230 Park Avenue
New York, New York 10169
Tel: (212) 661-9100
Fax: (212) 682-6104

*Counsel to GH N LLC*

4

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GRACIOUS HOME LLC, *et al.*, | Case No. 16-13500 (MKV) |
| Debtors.[1] | (Jointly Administered) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (II) MODIFYING THE AUTOMATIC STAY; (III) AUTHORIZING THE DEBTORS TO ENTER INTO AGREEMENTS WITH GRACIOUS HOME LENDING LLC; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") [ECF No. 128] of the above-captioned debtors (each a "Debtor" and collectively, the "Debtors") for interim and final orders, under sections 105, 361, 362, 363, and 364, of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 4001 of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules") seeking, among other things:

    i.      authority, pursuant to Bankruptcy Code sections 363, 364(c) and 364(d), for each of the Debtors, jointly and severally, to obtain the DIP Facility[2] pursuant to the DIP Financing Documents, this Interim Order, and the proposed Final DIP Order,

    ii.     authority for the Debtors to enter into that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement among the Borrowers and Gracious Home Lending LLC

---

[1] The Debtors in these chapter 11 cases and the last four digits of their tax identification numbers are: Gracious Home Holdings LLC (3251); Gracious Home Payroll LLC (3681), Gracious Home LLC (3251); GH East Side LLC (3251); GH West Side LLC (3251); GH Chelsea LLC (3251) and Gracious (IP) LLC (3251). The latter five entities are disregarded for tax purposes and do not have their own tax identification numbers, but use that of Gracious Home Holdings LLC. The address of the Debtors' corporate headquarters is 1210 Third Avenue, New York, New York 10021.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "DIP Lender") (as amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement," together with all agreements, documents, and instruments delivered or executed in connection therewith, the "DIP Financing Documents"), which DIP Credit Agreement shall be substantially the same form as attached hereto as **Exhibit 1**;

iii.      authority for the Debtors to use the DIP Facility and the proceeds thereof to (a) to fund the working capital needs and chapter 11 administrative costs of the Borrowers during the pendency of the Chapter 11 Cases, (b) to pay fees, costs and expense of the DIP Facility on the terms and conditions described in the DIP Facility Documents, (c) to provide adequate protection to the DIP Lender, (d) to deposit $500,000 from the Interim Order Amount (as defined in the DIP Credit Agreement) into an escrow account (the "GHN Reserve") to fund payment of amounts owed to GHN LLC ("GHN"), as assignee of Signature Bank's claim,[3] (e) pay from the Interim Order Amount, half of the amount owed to Townsend House Corp. ("Townsend"), for rent accruing post-petition ("Townsend Payment") and (f) to pay other amounts as specified in the Budget.

iv.      the grant of valid, enforceable, non-avoidable and fully perfected first priority liens on and senior security interests in all of the property, assets and other interests in property and assets of the Debtors, whether such property is presently owned or after acquired, and all other "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date, subject

---

[3] For the avoidance of doubt, nothing herein shall constitute a waiver of the right of the Debtors or the Statutory Committee of Unsecured Creditors (the "Committee") formed in these cases to challenge the validity, enforceability, priority or extent of any of the obligations owed to Signature Bank or GHN or any of the liens on the Debtors' property securing such obligations.

to entry of the Final Order and subordinate to the Carve-Out (each as defined below) and the liens of GHN on the GHN Reserve.

     v.     the grant to the DIP Lender of superpriority administrative claims, subject to the limitations set forth in paragraph 9 below, pursuant to Bankruptcy Code sections 364(c)(1) and 507(b), against each of the Debtors' estates to the DIP Lender with respect to the DIP Obligations, subordinate to the payment of the Carve-Out in accordance with the terms of this Order;

     vi.     the limitation of the Debtors' and estates' right to surcharge against the DIP Collateral (as defined below) pursuant to Bankruptcy Code section 506(c);

     vii.     that, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of this order (this "Interim Order") that, among other things, authorizes the Borrowers, on an interim basis, to borrow from the DIP Lender under the DIP Financing Documents up to an aggregate principal amount not to exceed $1,000,000;

     viii.     that this Court schedule a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing, among other things, the balance of the borrowing under the DIP Financing Documents on a final basis, as set forth in the Motion and DIP Financing Documents;

     ix.     modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h); and

     x.     granting related relief.

Notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) (the "Notice") having been served by the Debtors in accordance with Bankruptcy Rule

4001 and 9006 on: (i) the counsel for the DIP Lender; (ii) the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (iii) counsel for the Committee; (iv) all parties known to the Debtors who hold any liens or security interest in the Debtors' assets who have filed UCC-1 financing statements against any of the Debtors, or who, to any Debtor's knowledge, have asserted any liens on any of such Debtors' assets; and (v) all parties who have requested notice pursuant to Rule 2002.

Pursuant to Bankruptcy Rule 4001, this Court held a hearing to consider the relief requested in the Motion, on an interim basis, on January 31, 2017 and on February 2, 2017 (together, the "Interim Hearing").

After the Motion and the proceedings before this Court at the Interim Hearing; and all objections, to the interim relief requested in the Motion having been filed by the Committee [ECF No. 155], GHN [ECF No. 146], Townsend [ECF No. 144], 201 East 69 LLC ("201 East") [ECF No. 142], and the Committee, Townsend and 201 East having resolved their objections with the Debtors and the Court having overruled the objection filed by GHN as reflected on the record established by the Debtors at the Interim Hearing and the hearing held on February 2, 2017;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE DEBTORS' MOTION, THE REPRESENTATIONS OF COUNSEL AND EVIDENCE SUBMITTED DURING THE INTERIM HEARING:[4]**

---

[4]   To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

A.   <u>Petition Date</u>.  On December 14, 2016 (the "<u>Petition Date</u>"), the Debtors each commenced a case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;[5]

B.   <u>Notice</u>.  In light of the circumstances, the Debtors gave due and sufficient notice of the Motion pursuant to the January 25, 2017 Order Shortening Time for Notice of the Hearing to Consider Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense Status; (II) Modifying the Automatic Stay; (III) Authorizing the Debtors to enter into Agreements with Gracious Home Lending LLC; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief [ECF 130];

C.   <u>Jurisdiction and Venue</u>.  This Court has core jurisdiction over the Debtors' bankruptcy cases, the Motion, and the parties and property affected by this Interim Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

D.   <u>Inability to Obtain Unsecured Credit</u>.  The Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense necessary to maintain and conduct their businesses;

E.   <u>Inability to Obtain Alternate Secured Credit</u>.  The Debtors are unable to obtain secured credit on more favorable terms than under the terms and conditions provided in this Interim Order and the other DIP Financing Documents;

F.   <u>Best Interests of Estates</u>.  It is in the best interest of Debtors' estates that the Debtors be allowed to enter into the DIP Facility to obtain postpetition secured financing from

---

[5]   Unless otherwise noted, all statutory references are to the Bankruptcy Code.

the DIP Lender on an interim basis under the terms and conditions set forth herein and in the DIP Financing Documents, as such is necessary to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing;

G.      Good Faith.   The extension of credit and financial accommodations under the DIP Financing Documents are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration and the DIP Lender is entitled to the protections of Bankruptcy Code section 364(e);

H.      Necessity of DIP Facility Terms.   The terms of the DIP Financing Documents and this Interim Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Interim Order will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in Bankruptcy Code section 364(e), which is applicable to the postpetition financing arrangement contemplated in the DIP Financing Documents, are necessary in order to induce the DIP Lender to provide postpetition financing to the Debtors; and

I.      Good Cause for Entry to Avoid Immediate and Irreparable Harm.   Good and sufficient cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).   Absent granting the relief set forth in this Interim Order, the Debtors and their estates will be immediately and irreparably harmed.   Entry of this Interim Order, consummation of the financing under the DIP Facility in accordance with this Interim Order and the DIP Financing Documents are in the best interests of the Debtors, their estates and their creditors.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

6

**IT IS HEREBY ORDERED that:**

1.      DIP Facility Approval.  The Motion is granted on an interim basis to the extent set forth herein, effective as of the date hereof.  Any objections to the interim relief requested in the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.  The Debtors are authorized, pursuant to Bankruptcy Code section 364, to enter into and be a party to the DIP Facility pursuant to the DIP Financing Documents (with such changes, if any, as were authorized to be made as amendments to the DIP Financing Documents in accordance with this Order), to execute the DIP Financing Documents and such other and additional documents necessary or desired to implement the DIP Facility or the DIP Financing Documents, to obtain postpetition secured financing from the DIP Lender, to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing.

2.      DIP Facility Obligations.  The DIP Financing Documents shall constitute and evidence the valid and binding effect of the Debtors' obligations under the DIP Facility, which DIP Facility obligations shall be legal, valid, and binding obligations of the Debtor parties thereto and enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in any of the Debtors' cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any such cases, or in any other proceedings superseding or related to any of the foregoing.  The Debtors shall be jointly and severally liable for repayment of any funds advanced pursuant to the DIP Financing Documents, together with interest thereon, at the times and in the amounts set forth in the DIP Financing Documents.  No obligation, payment, transfer or grant of security under the DIP Financing Documents or this Interim Order with respect to the DIP Facility shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-

bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

3.  <u>Authorization to Borrow</u>.  Until the Termination Date, the Debtors are hereby authorized, on an interim basis, to borrow from the DIP Lender under the DIP Facility in an aggregate principal amount up to $1,000,000, subject to the terms and conditions set forth in the DIP Financing Documents and this Interim Order.

4.  <u>Use of Proceeds</u>.  From and after the entry of this Interim Order, the Debtors shall use advances of credit under the DIP Facility (the "<u>DIP Loans</u>") only for the express purposes specifically set forth in this Interim Order, the DIP Financing Documents and in compliance with the Budget attached hereto as **Exhibit 2** (the "<u>Approved Budget</u>"), subject to the permitted variances set forth in the DIP Credit Agreement.  The Debtors are authorized to use the proceeds of the DIP Loans, in part, to make certain adequate protection payments to the DIP Lender as well as pay any and all fees owed to the DIP Lender pursuant to the DIP Financing Documents. In addition, the Debtors are authorized to the use the proceeds of the DIP Facility to establish the GHN Reserve and to make the Townsend Payment.

5.  <u>Approved Budget</u>.  Except as otherwise provided herein or approved by the DIP Lender, the proceeds of the DIP Facility shall be used only in compliance with the Approved Budget and in accordance with terms of the DIP Financing Documents.

6.  <u>Payment of DIP Fees and Expenses</u>.  The Commitment Fee, Funding Fee and the Work Fee (each as defined and set forth in DIP Credit Agreement) for DIP Lender's counsel (Arent Fox LLP) are each hereby approved in their respective entirety and the Debtors are hereby authorized and directed to pay such fees upon entry of this Interim Order, to the extent due, and in accordance with, and on the terms set forth in, the DIP Financing Documents.  The Debtors are also hereby authorized and directed to pay upon demand all other fees, costs,

8

expenses and other amounts payable under the terms of the DIP Financing Documents and all other reasonable fees and out-of-pocket costs and expenses of the DIP Lender in accordance with the terms of the DIP Financing Documents (including, without limitation, the reasonable postpetition fees and out-of-pocket costs and expenses of Arent Fox LLP, as counsel to the DIP Lender), subject to receiving a written invoice therefor; provided however, that the Exit Fee and Applicable Premium (each as defined in the DIP Credit Agreement) (a) are approved on an interim basis only and, until entry of the Final Order, (b) shall be payable upon (i) a refinancing of the amounts owed under the DIP Financing Documents, (ii) a sale of all or substantially all of the Debtors' assets, or (iii) termination of the DIP Credit Agreement for failure to obtain entry of a Final Order, so long as such failure is not the result of the DIP Lender refusing to lend based upon the occurrence of an Event of Default or failure to satisfy a condition precedent to borrowing under the terms of the DIP Financing Documents (exclusive of the conditions relating to the GHN Reserve) (a "Final Order Failure"); provided further, that if a Final Order Failure is based upon the Debtors' refusal to perform or satisfy a condition to borrowing, in such case a Final Order Failure shall not preclude payment of the Exit Fee and Applicable Premium.  None of such fees, costs, expenses or other amounts shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, however, that copies of any such invoices shall be provided contemporaneously to the U.S. Trustee and counsel to the Committee; provided further, however, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information (the "Redactions"), and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the

attorney work product doctrine. If the Debtors, U.S. Trustee or counsel to the Committee object

to the reasonableness of the fees and expenses of the DIP Lender, and such objection cannot be

resolved within ten (10) days of receipt of such invoices, the Debtors, the U.S. Trustee, or the

Committee, as the case may be, shall file with the Court and serve on the DIP Lender an

objection limited to the reasonableness of such fees and expenses (each, a "Reasonableness Fee

Objection"). Without limiting the foregoing, if the U.S. Trustee objects to the Redactions and

such objection cannot be resolved within ten (10) days of receipt of such invoices, the DIP

Lender shall file with the Court and serve on the Debtors and the United States Trustee request

for Court resolution of the disputes concerning the propriety of the disputed Redactions (each, a

"Redaction Fee Objection," and each Reasonableness Fee Objection and Redaction Fee

Objection may be referred to herein generally as a "Fee Objection"). Any hearing on an

objection or request, as applicable, regarding payment of any fees, costs, and expenses set forth

in a professional fee invoice shall be limited to the propriety of the Redactions and the

reasonableness of the particular items or categories of the fees, costs, and expenses, in each case

which are the subject of such objection or request, as applicable. The Debtors shall pay, in

accordance with the terms and conditions of this Interim Order, within fifteen (15) days after

receipt of the applicable invoice (a) the full amount invoiced if no objection has been timely

filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which an

objection has been timely filed. All such unpaid fees, costs, expenses and other amounts owed

or payable to the DIP Lender shall be secured by the DIP Collateral and afforded all of the

priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP

Financing Documents.

7.   Indemnification.  The Debtors are hereby authorized, on an interim basis, to and

10

hereby agree to indemnify and hold harmless the DIP Lender and its directors, officers, employees, agents, attorneys, or any other Person affiliated with or representing the DIP Lender (collectively, an "Indemnified Party") harmless against: (a) all obligations, demands, claims, and liabilities (collectively, "Indemnity Claims") asserted by any other party in connection with the transactions contemplated by the Loan Documents; and (b) all losses or expenses incurred, or paid by the DIP Lender from, following, or arising from the transactions contemplated by the DIP Financing Documents (including reasonable attorneys' fees and expenses), except for Indemnity Claims and/or losses directly caused by the DIP Lender's gross negligence or willful misconduct.   No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor or any of its subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions contemplated hereby, except to the extent such liability is determined by a court of competent jurisdiction in a final non-appealable judgment or order to have resulted solely from such Indemnified Party's gross negligence or willful misconduct.   In no event, however, shall any Indemnified Party be liable on any theory of liability for any special, indirect, consequential or punitive damages.   All indemnities of the Indemnified Parties shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Financing Documents.

8.    <u>GHN Reserve</u>.   Upon entry of this Interim Order and the funding of the GHN Reserve, all liens asserted by GHN against any of the Debtors' assets and property shall automatically be transferred to and shall constitute perfected first priority liens on and security interests in the GHN Reserve.   The DIP Liens, described in paragraph 10 below, shall automatically constitute perfected second priority liens on and security interest in the GHN

Reserve.

9.    <u>DIP Superpriority Claims</u>.    In accordance with Bankruptcy Code section 364(c)(1), the DIP Obligations shall constitute senior administrative expense claims against each Debtor (the "<u>DIP Superpriority Claims</u>") with priority in payment over any and all administrative expenses at any time existing or arising, of any kind or nature whatsoever, including, without limitation, the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; <u>provided</u>, <u>however</u>, that the DIP Superpriority Claims shall be subject to and subordinate to the Carve-Out; <u>provided</u>, <u>further</u> that the DIP Superpriority Claims shall have recourse to and be payable from all pre-petition and post-petition property of the Debtors and their estates and all proceeds thereof, excluding (i) all claims, causes of action and proceeds of any and all avoidance power claims under Sections 544, 545, 547, 548 through 551 and 553(b) of the Bankruptcy Code, and the proceeds thereof (the "<u>Avoidance Actions</u>"), (ii) any security deposits in the possession of former or current landlords for the Debtors' lease of non-residential real property, and (iii) any funds held in the GHN Reserve until such time that those funds, if any, remain following GHN's confirmed receipt, or this Court's determination, of payment in full of amounts owed to GHN, are returned to the Debtors, at which time the DIP Superiority Claims shall have recourse to, and be payable from any distribution to the Debtors from any remaining funds in the GHN Reserve, in accordance with the terms of the DIP Credit Agreement.

10.    <u>DIP Liens</u>.  As security for the DIP Obligations, the DIP Lender, is hereby granted, on an interim basis (effective upon the date of this Interim Order, without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instrument or otherwise or the possession or control by the DIP Lender), as contemplated under the DIP Documents, valid, perfected, and unavoidable security interests in and liens upon (such security interests and liens, collectively, the "<u>DIP Liens</u>") any and all present and after-acquired tangible and intangible property and assets of the Debtors and their estates, whether real or personal, of any nature whatsoever and wherever located, including, without limitation: (a) all accounts, chattel paper, deposit accounts, documents (as defined in the UCC), equipment, general intangibles, instruments, inventory, and investment property and support obligations; (b) Intellectual Property and related assets; (c) Commercial Tort Claims; (d) all books and records pertaining to the Debtors' operations; (e) all other goods (including but not limited to fixtures) and personal property of such Debtor, whether tangible or intangible and wherever located; and (f) to the extent not covered by the foregoing, all other assets or property of the Debtors, whether tangible, intangible, real, personal or mixed, and all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing, and in each case to the extent of any Debtor's respective interest therein; (all of which being hereinafter collectively referred to as the "<u>DIP Collateral</u>"); <u>provided</u>, <u>however</u>, that (i) (a) the DIP Collateral shall not include any security deposits in the possession of former or current landlords for the Debtors' lease of non-residential real property, (b) Avoidance Actions or (c) any goods held by Borrowers on

consignment or pursuant to shop-in-shop agreements, and (ii) the DIP Liens shall be subject to the payment in full in cash of the amounts due under the Carve-Out and otherwise have the priority as follows:

      (a)      pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected liens upon and security interests in all of the Debtors' right, title and interest in, to and under all DIP Collateral that is not otherwise encumbered by a validly perfected unavoidable security interest or lien on the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code); provided however that the DIP Liens shall be second priority liens and subordinate only to the liens asserted by GHN against the GHN Reserve until such time that any remaining funds from the GHN Reserve are released to the Debtors, following GHN's confirmed receipt, or this Court's determination, of the payment in full of all obligations owing to GHN, at which point the DIP Lender shall have valid perfected first priority lien upon and security interest in all of the Debtors' right, title and interest in such released funds; and

      (b)      the DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551, (ii) except as expressly set forth herein or in the DIP Financing Documents, any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors to the extent permitted by applicable non-bankruptcy

14

law or (iii) any intercompany or affiliate liens of the Debtor. The DIP Liens shall not be

subject to sections 506(b) and (c), 510, 549, 550 or 551 of the Bankruptcy Code.

11.   <u>Carve-Out</u>.

(a)  As used in this Interim Order, the term "<u>Carve-Out</u>" shall mean, to the extent

unencumbered funds are not immediately available on the date of delivery of a Carve-Out

Trigger Notice (as defined below) to pay administrative expenses in full, proceeds of DIP

Collateral to pay the following expenses:

(i)     all fees required to be paid to the Clerk of the Bankruptcy Court and to the
Office of the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest
pursuant to 31 U.S.C. § 3717;

(ii)    the reasonable fees and expenses up to $25,000 incurred by a trustee
appointed in the Debtors' cases under section 726(b) of the Bankruptcy
Code;

(iii)   to the extent allowed by the Bankruptcy Court at any time, all accrued and
unpaid fees, disbursements, costs and expenses incurred by professionals
or professional firms retained by the Debtors or the Committee pursuant to
sections 327, 328, 363 or 1103 of the Bankruptcy Code (other than
ordinary course professionals) (collectively, the "<u>Professionals</u>") at any
time before or on the date of the delivery by the DIP Lender of a Carve-
Out Trigger Notice (as defined below), whether such amounts are allowed
by the Bankruptcy Court prior to or after delivery of such Carve-Out
Trigger Notice (and including amounts incurred but not invoiced prior to
the delivery of the Carve-Out Trigger Notice); and

(iv)    all unpaid fees, disbursements, costs and expenses incurred by the
Professionals on or after the day following the delivery by the DIP Lender
of the Carve-Out Trigger Notice, to the extent allowed by the Bankruptcy
Court at any time, in an aggregate amount not to exceed $175,000 (such
amount set forth in clause (iii), the "<u>Post-Carve-Out Trigger Notice Cap</u>",
and, together with such amounts set forth in clauses (i) and (ii) above, the
"<u>Carve-Out</u>").

(b)  As used herein, the term "<u>Carve-Out Trigger Notice</u>" means a written notice

provided by the DIP Lender to the Debtors, the U.S. Trustee and the Committee that the

Carve-Out is invoked, which notice can be delivered only when the DIP Lender is

15

entitled to exercise remedies under the DIP Facility due to the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and the Termination Date has occurred. Notwithstanding anything to the contrary contained in this Interim Order or in any DIP Documents, the liens and claims granted to any of the DIP Lender (including, without limitation, the DIP Liens and DIP Superpriority Claims) under, pursuant to or in connection with the DIP Facility, any DIP Document, this Interim Order shall be subject to the payment in full in cash of the amounts due under the Carve-Out.

(c)   After receipt of the Carve-Out Trigger Notice, the Debtors shall provide notice by email and facsimile to all Professionals, at the email addresses and facsimile numbers set forth in each Professional's notice of appearance filed with the Bankruptcy Court (or, if there is no such notice of appearance, at such Professional's last known email address and facsimile number) and by filing a notice thereof on the docket of the Bankruptcy Court within two (2) Business Days after the Debtors' receipt of a Carve-Out Trigger Notice informing them that such Carve-Out Trigger Notice has been received and further advising them that the Debtors' ability to pay such Professionals is subject to and limited by the Carve-Out.

(d)   Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been delivered in accordance with this Interim Order: (i) the Debtors shall be permitted to pay administrative expenses of Professionals allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable, including on an interim basis; and (ii) such payments shall not reduce, or be deemed to reduce, the Carve-Out; provided however, that so long as the Final Order has been entered, the Debtors

16

shall not pay the administrative expenses of the Professionals until such time that Townsend has received payment in full of rent accruing after the Petition Date.

(e)  Nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, DIP Lender, the Committee, U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested.

12.    Bankruptcy Code Section 506(c) Waiver.  Without limiting the Carve-Out, the Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under Bankruptcy Code section 506(c) or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender upon the DIP Collateral and no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against the DIP Lender, or its respective claims or liens (including any claims or liens granted pursuant to this Interim Order).

13.    No Marshaling/Application of Proceeds.  In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral, and all proceeds thereof shall be received and used in accordance with this Interim Order.

14.    Disposition of Collateral; Application of Proceeds.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or

from any order of this Court).  In addition to satisfying all amounts owed under the DIP Facility

and DIP Financing Documents as required by the Bankruptcy Court and the DIP Financing

Documents and subject to paragraph 6 above, upon the sale of any, all or substantially all of the

Debtors' assets, the Debtors shall pay the DIP Lender an amount equal to ten percent (10%) of

amounts to be distributed to creditors or interest holders pursuant to the priorities set forth in the

Bankruptcy Code and the Debtors are authorized and directed to make such payment without

further order of the Court.

15.     <u>Restrictions on Granting Postpetition Liens</u>.  Other than the Carve-Out or as

otherwise provided in this Interim Order or the DIP Financing Documents, no claim or lien

having a priority superior or *pari passu* with those granted by this Interim Order or the DIP

Financing Documents to the DIP Lender shall be granted or permitted by any order of this Court

heretofore or hereafter entered in the Chapter 11 Cases, and the Debtors will not grant any such

mortgages, security interests or liens in the DIP Collateral (or any portion thereof) to any other

parties pursuant to section 364(d) of the Bankruptcy Code or otherwise, while (i) any portion of

the DIP Facility, any DIP Loans or any other DIP Obligations are outstanding or (ii) the DIP

Lender have any Commitment under the DIP Credit Agreement.

16.     <u>Automatic Effectiveness of Liens</u>.  The DIP Liens shall not be subject to a

challenge and shall attach and become valid, perfected, binding, enforceable, non-avoidable and

effective by operation of law as of the date of the entry of this Interim Order without any further

action by the Debtors, the DIP Lender, respectively, and without the necessity of execution by

the Debtors, or the filing or recordation, of any financing statements, security agreements,

vehicle lien applications, mortgages, filings with a governmental unit (including, without

limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents

or the taking of any other actions.  All DIP Collateral shall be free and clear of other liens, claims
and encumbrances, except as provided in the DIP Financing Documents and this Interim Order.
If the DIP Lender hereafter requests that the Debtors execute and deliver to the DIP Lender,
financing statements, security agreements, pledge agreements, control agreements, collateral
assignments, mortgages, or other instruments and documents considered by the DIP Lender to be
reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the
Debtors are hereby authorized and directed to execute and deliver such financing statements,
security agreements, pledge agreements, control agreements, mortgages, collateral assignments,
instruments, and documents, and the DIP Lender is hereby authorized to file or record such
documents in its discretion without seeking modification of the automatic stay under Bankruptcy
Code section 362, in which event all such documents shall be deemed to have been filed or
recorded at the time and on the date of the entry of this Interim Order; provided, however, no
such filing or recordation shall be necessary or required in order to create or perfect the DIP
Liens.  The DIP Lender, in its sole discretion, may file a photocopy of this Interim Order as a
financing statement with any filing or recording office or with any registry of deeds or similar
office, in addition to, or in lieu of, such financing statements, notices of liens or similar
statements.

17.    Protection Under Section 364(e) of the Bankruptcy Code.  The DIP Lender has
acted in good faith in connection with this Interim Order and their reliance on this Interim Order
is in good faith.  Based on the record of these Chapter 11 Cases, and in accordance with
Bankruptcy Code section 364(e), if any or all of the provisions of this Interim Order are hereafter
reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not
affect the (i) validity of any DIP Obligations owing to the DIP Lender incurred prior to the actual

receipt by the DIP Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any DIP Loans or other advances previously made or any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Financing Documents with respect to any DIP Obligations. Notwithstanding any such reversal, modification, vacation or stay, the incurrence of DIP Obligations prior to the actual receipt by the DIP Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Bankruptcy Code section 364(e), this Interim Order, and the DIP Financing Documents with respect to the incurrence of DIP Obligations.

18.     <u>Reservation of Rights of the DIP Lender</u>. Notwithstanding any other provision of this Interim Order to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the DIP Lender to (i) request modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of any of these cases, conversion of any of these cases to cases under Chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of these cases, (iii) seek to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal or equitable or otherwise) of the DIP Lender. The delay in or failure of the DIP Lender to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Lender's rights and remedies.

19.     <u>Remedies and Notice Upon the Occurrence of Termination Date or Event of</u>

Default.  Upon prior written notice by the DIP Lender to counsel for the Debtors, the U.S. Trustee, and counsel for the Committee of the occurrence of the Termination Date or Event of Default (each as defined in the DIP Credit Agreement and incorporated herein by reference) and following the expiration of any applicable grace period, the DIP Lender may (i) declare the DIP Obligations to be immediately due and payable; (ii) terminate the Debtors' ability to access the DIP Loans; and/or (iii) upon seven (7) days notice to the Debtors, the Committee and the U.S. Trustee, exercise all default-related rights and remedies against the DIP Collateral, without further order of or application or motion to the Bankruptcy Court, and without restriction or restraint by any stay under Bankruptcy Code section 362 and 105 or otherwise, provided however, that the DIP Lender shall provide an accounting to the Debtors, the Committee and the U.S. Trustee of the proceeds of any liquidation of the DIP Collateral and return any DIP Collateral or proceeds thereof in excess of amounts owed to the DIP Lender under the DIP Credit Agreement within ten (10) days of such liquidation(s).

20.    Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the DIP Superpriority Claims and the DIP Liens in the DIP Collateral granted pursuant to this Final Order and the DIP Financing Documents shall continue in full force and effect notwithstanding the entry of any such order.  Such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Financing Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged or otherwise treated under a plan of reorganization, which is reasonably acceptable to

21

the DIP Lender.  In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Financing Documents unless agreed to by and among the Debtors and the DIP Lender.

21.     Interim Order Governs.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Financing Documents, the provisions of this Interim Order shall govern.

22.     Modifications of DIP Documents.  The Debtors and the DIP Lender are hereby authorized, on an interim basis, to implement, in accordance with the terms of the DIP Financing Documents, any non-material modifications of the DIP Financing Documents without further notice, motion or application to, order of or hearing before, this Court.  Any material modification or amendment to the DIP Financing Documents shall only be permitted pursuant to an order of this Court, after being submitted to this Court upon notice to counsel for the Committee, and the U.S. Trustee; provided, that any forbearance from, or waiver of, (a) a breach by the Debtors of a covenant representation or any other agreement or (b) a default or an Event of Default, in each case under the DIP Financing Documents shall not require an order of this Court.

23.     Proofs of Claim.  Notwithstanding any order entered by the Bankruptcy Court in relation to the establishment of a bar date in the Chapter 11 Cases to the contrary, or otherwise, the DIP Lender shall not be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein.

24.     Immediate Effect of Order.  The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise.  Furthermore, to the extent

22

applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

25.    <u>Final Hearing</u>.    A final hearing with respect to the Motion is scheduled for **February 9, 2017 at 10:00 a.m.** (Eastern Standard Time) (the "<u>Final Hearing</u>").   The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Bankruptcy Rule 2002 request for service.   Any party in interest objecting to the relief sought at the Final Hearing shall file written objections, and serve them on or before **February 5, 2017 at 1:00 p.m.** (Eastern Standard Time) and replies, if any, shall be filed and served on or before **February 6, 2017 at 1:00 p.m.** (Eastern Standard Time).


Dated:  New York, New York
         February 2, 2017

                              *s/ Mary Kay Vyskocil*
                              HONORABLE MARY KAY VYSKOCIL
                              UNITED STATES BANKRUPTCY JUDGE